## EATON v. CARGO OF LUMBER.

(District Court, E. D. New York. May 6, 1910.)

1. SHIPPING (§ 171*)—DEMURRAGE—CONSTRUCTION OF CHARTER—DELAY IN REACHING DOCK.

A provision of a charter party requiring the charterer to pay towing charges from the mouth of a creek to the dock of the charterer thereon for discharge does not require the charterer to provide the tug to do such towing nor render it liable for delay in obtaining such tug.

[Ed. Note.—For other cases, see Shipping, Dec. Dig. § 171.*

Demurrage, see notes to Harrison v. Smith, 14 C. C. A. 657; Randall v. Sprague, 21 C. C. A. 337; Hagerman v. Norton, 46 C. C. A. 4.]

2. SHIPPING (§ 181*)—DEMURRAGE—LAY DAYS—NOTICE—ARRIVAL OF VESSEL.

A provision of a charter party that lay days for discharging shall commence "from the time the captain reports his vessel ready to discharge cargo in New York harbor," where other provisions show that she was to discharge at the charterer's dock some distance up a creek, did not entitle the vessel to compute her time from notice of readiness while lying in the harbor before proceeding to the dock, when the delay was caused by the captain and exceeded the time lost.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 589–591; Dec. Dig. § 181.*]

In Admiralty. Suit by Frederic R. Eaton against cargo of lumber, lately on board schooner Edward T. Stotesbury. Decree for respondent.

Henry W. Goodrich, for libelant.
Solomon C. Whitbeck, for claimant.

CHATFIELD, District Judge. The libelant chartered to certain parties a schooner, the Edward T. Stotesbury, for a trip from Mobile, Ala., to New York. The charter party provided that the vessel should be discharged at a rate "not less than 60,000 feet per running day, Sundays and legal holidays excepted, commencing from the time the captain reports his vessel ready to discharge cargo, in New York harbor. Time consumed in shifting vessel to count as lay days." The charter party further provided:

"Charterers to pay towing mouth of Newtown creek to Cross, Austin & Ireland Lumber Co. and return."

The vessel arrived in the harbor of New York within the time provided for in other parts of the charter party, but was delayed after reporting her arrival in getting the necessary tugboats and in proceeding up Newtown creek to the dock of the charterer, Cross, Austin & Ireland Lumber Company. The unloading was begun away from the face of the dock, owing to certain delays in securing a berth, but the actual rate of unloading and the amount of time consumed in moving the vessel from that dock to a different location near the Gowanus creek and finishing the unloading there was at a more rapid rate than the minimum provided by the charter party; some of the lost time thus being saved.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Without going into details, but taking the dates testified by the captain, who seems to have erroneously copied the mate's memoranda for the log, and thus credited two days which he might have included, the actual situation is that from January 19th, the day the boat arrived in the harbor and proceeded to an anchorage, until the 6th day of February at 1 p. m., amounts to 16 days exclusive of lay days, which the discharge of cargo at the rate specified would consume. From Saturday, February 6th, until February 11th, 5⅛ days were lost, for which this action is brought.

The libelant contends that the provision in the charter compelling the charterer to pay the towing from the mouth of Newtown creek to the dock frees the boat and its captain and owners from any responsibility for the time lost in accomplishing that towing, and also that the language "ready to discharge cargo, in New York harbor," means from the time the vessel reported in the harbor rather than the time when docked ready to discharge.

It would seem that, if the expenses of towing were to be repaid by the charterer, the vessel could not thereby be relieved from proceeding under the charter to the place of unloading. At the most a demand upon the charterer to furnish the tow would have been necessary before responsibility for failing to provide a tugboat could be thrown upon those who were responsible for the cost. In addition, the arrival in the harbor ready to discharge cargo was, under ordinary circumstances, an ambiguous provision, and, in view of the other provisions showing that the cargo was to be unloaded some distance up Newtown creek, it is impossible to consider that the parties to the charter intended to have the boat report its readiness when lying in the harbor.

Allowing the usual time of 24 hours to report and to be taken to a dock, it would seem that the balance of the time 4⅛ days, should not be counted against the vessel, as some 8 days elapsed before she was in her berth, and none of this seems to be the fault of the charterer, but was rather because of the insistence of the captain in maintaining his construction of an ambiguous charter.

The libel will be dismissed, but without costs.